UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                               Criminal Case No. 11-cr-20320-1
                                               Honorable Linda V. Parker

SHELLY RENEE HEBEL,

    Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTIONS FOR COMPASSIONATE RELEASE (ECF NOS. 119 & 123)

On August 12, 2011, Defendant pleaded guilty pursuant to a plea agreement to one count of conspiracy to manufacture methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1). (ECF No. 63.) The Honorable Mark A. Goldsmith sentenced Defendant to 188 months of imprisonment on November 29, 2011.[1] (ECF No. 79.) Defendant has filed two pro se motions for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF Nos. 119, 123), supplemented by the Federal Public Defender's Office (ECF Nos. 126). The Government opposes Defendant's request. (ECF No. 130.) For the reasons that follow, the Court grants Defendant's motions.

---

[1] This case was reassigned to the undersigned on February 10, 2016.

1

Defendant seeks compassionate release based on three primary factors. First, she cites her confinement in a congregant setting during the COVID-19 pandemic and her increased risk of a serious outcome if she contracts COVID-19 due to her age (52), decades of smoking cigarettes, and drug abuse. Second, she cites family circumstances. Specifically, Defendant maintains that she is the only available caretaker for her aging mother, Carolyn Arthur, who suffers from Alzheimer's disease, high blood pressure, diabetes, and heart problems, and has undergone two knee replacements. While Defendant has a sister, Heather Wilcox, who is available to care for their mother, Defendant maintains that Ms. Wilcox is not "reasonably" available as she works more than 50 hours a week as a caregiver in an assisted living facility, is on-call seven days a week, is a single mother with young children, and is studying to obtain additional caregiving credentials.

Lastly, Defendant cites her "overly-long sentence coupled with her extraordinary rehabilitation" as extraordinary and compelling circumstances. Defendant maintains that her sentence reflects repeated convictions and a resulting career offender status attributable to her substance abuse disorder for which she received little treatment prior to her current conviction. Without such treatment, each time Defendant was released from prison she soon returned to using drugs and found herself back in custody—a vicious cycle caused by a substance abuse disorder which Defendant's strong will and good intentions could not overcome

and which increasingly lengthy sentences could not deter.  During her incarceration, Defendant has completed drug treatment and more than 500 hours of programming, including reentry courses and vocational training.  (*See* ECF Nos. 127-1, 127-5, 127-6.)  She worked 35 hours a week as a butcher and then as an orderly in her unit.  She incurred no discipline.  (ECF No. 127-4.)  She served as a role model for other inmates.  (*See* ECF Nos. 126-5 to 126-12.)

Since the filing of her motions and her counsel's supplemental briefs, the BOP approved Defendant for home confinement beginning August 4, 2021, and Defendant has been residing with Ms. Arthur.[2]  (ECF Nos. 136, 137.)  Defendant obtained employment on August 23, has been caring for her mother, and has been complying with program requirements.  Defendant maintains that this development bolsters her contention that "extraordinary and compelling reasons" exist to warrant a reduction of her sentence, as it reflects the BOP's determination that she is an "at-risk inmate[]" and that she does not pose a danger to the community.

---

[2] Courts have concluded that a defendant's release to home confinement does not moot his or her motion for compassionate release as the defendant remains under BOP supervision and the BOP could rescind the designation and reincarcerate the defendant.  *See, e.g., United States v. Busby*, 534 F. Supp. 3d 661, 662-63 (N.D. Tex. 2021); *United States v. Mize*, No. 3:12-cr-137, 2021 WL 3891062, at *4 (E.D. Tenn. Aug. 31, 2021).

## Applicable Law

In 2018, the First Step Act revised 18 U.S.C. § 3582(c)(1)(A) to allow incarcerated individuals to move for compassionate release in federal court without Bureau of Prison (BOP) approval provided the individuals first exhausted the BOP's administrative process or requested compassionate release from their warden and waited 30 days. *United States v. Jones*, 980 F.3d 1098, 1105 (6th Cir. 2020). A court may grant compassionate release when it finds three requirements satisfied: (i) "extraordinary and compelling reasons warrant" such a reduction; (ii) "such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission"; and (iii) the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, favor release. 18 U.S.C. § 3582(c)(1)(A)(i) (emphasis added); *see also United States v. Jones*, 980 F.3d 1098, 1105-08 (6th Cir. 2020). The second requirement is omitted where an incarcerated individual, as opposed to the BOP, files a compassionate-release motion. *Jones*, 980 F.3d at 1108, 1111; *see also United States v. Owens*, 996 F.3d 755, 759 n.2 (6th Cir. 2021).

The defendant bears the burden of proving that "extraordinary and compelling reasons" exist to justify release under the statute. *See United States v. Rodriguez*, 896 F.2d 1031, 1033 (6th Cir. 1990). "[I]n the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts

have discretion to define 'extraordinary and compelling' on their own initiative." *United States v. Elias*, 984 F.3d 516, (6th Cir. 2021) (citations omitted).

Here, the Government does not dispute that Defendant has properly exhausted the administrative remedies. (*See generally* ECF No. 130.) The Government disputes, however, that extraordinary and compelling circumstances warrant Defendant's release. (ECF No. 130 at Pg. ID 575-80.) The Government also argues that the § 3553(a) factors do not support a reduction in Defendant's sentence. (*Id.* at Pg. ID 587-91.)

## Analysis

In combination, the circumstances presented lead this Court to find extraordinary and compelling reasons to release Defendant.

All individuals living in congregate settings face an increased risk of contracting COVID-19.[3] Defendant's age places her at higher risk of hospitalization and death than younger individuals if she contracts the virus again.

---

[3] Defendant's release to home confinement may seem to moot this first reason. However, the decision whether to place a defendant on home confinement rests solely with the Bureau of Prisons. *See Mize*, 2021 WL 3891062, at *4 (citing Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020); *United States v. Coker*, No. 3:14-CR-085, 2020 WL 1877800, at *2 (E.D. Tenn. Apr. 15, 2020); *United States v. Read-Forbes*, 454 F. Supp. 3d 1113, 1118 (D. Kan. 2020)). As the BOP could decide to return Defendant to custody at any time—regardless of whether the risk of COVID-19 has abated—the Court still finds her risk of contracting COVID-19 in prison relevant.

*COVID Risks by Age*.  Her status as a former smoker also places her at increased risk.[4]  *People with Certain Medical Conditions*; *see also United States v. Galaz*, 477 F. Supp. 3d 1134, 1140 (S.D. Cal. 2020) (citing studies and cases granting compassionate release to individuals with histories of smoking).  The BOP apparently viewed Defendant as being at risk when it evaluated her as being eligible for placement on home confinement.  *See U.S. Dep't of Justice April 13, 2021 Memo*.

Defendant further establishes that she is needed at home to care for her mother.  (ECF No. 126-5 at Pg ID 503-04; ECF No. 132-3 at Pg ID 627-28; 642.)  "[S]ome courts have held that a defendant's role as the only available caregiver for an incapacitated close family member can contribute to 'extraordinary and compelling reasons' warranting that defendant's release."  *United States v. Wooten*, No. 3:13-cr-18, 2020 WL 6119321, at *4 (D. Conn. Oct. 16, 2020) (collecting cases).  Courts have granted compassionate release to defendants on this basis even where other family members are "available" but not *reasonably* available.  *See, e.g., United States v. Riley*, No. 12-cr-62, 2020 U.S. Dist. LEXIS 82909, at *6-7 (D. Vt. May 12, 2020) (granting compassionate release to defendant where none of

---

[4] The Court does not discredit Defendant's claim to be a former smoker based on her failure to identify it as a risk factor in her pro se motion or to inform the BOP of this fact at intake.  Unlike a food allergy or prior drug use, Defendant reasonably could have seen no reason to report this habit.

6

his three siblings could reasonably care for their ailing father); *United States v. Hernandez*, No 16-20091-CR, 2020 WL 4343991, at *1 (S.D. Fla. Apr. 3, 2020) (granting compassionate release to defendant who was "the only potential caregiver" for his mother).

Further, when combined with the above, Defendant's excellent rehabilitation supports a finding of extraordinary and compelling reasons for her release. A defendant's rehabilitation, alone, may "not be considered an extraordinary and compelling reason." *United States v. Owen*, 996 F.3d 755, 765-66 (6th Cir. 2021) (Thapar, J., dissenting) (quoting 28 U.S.C. § 994(t)). Nevertheless, a defendant's rehabilitation, in combination with other factors, may support extraordinary and compelling reasons for release. *See United States v. Owens*, 996 F.3d 755, 762 (6th Cir. 2021) (listing cases finding rehabilitation, along with other factors, supporting compassionate release and remanding matter for the district court to assess whether the defendant's rehabilitation, along with other factors, constitute an extraordinary and compelling reason); *see also United States v. Rodriguez*, 451 F. Supp. 3d 392, 405 (E.D. Pa. 2020)

Defendant also has served a substantial portion of her sentence. According to documentation dated more than a year ago (ECF No. 126-3 at Pg ID 475), Defendant has served over 70% of her sentence. According to Defendant, this calculation fails to account for the 13.5 months she spent in state custody before

7

her federal sentencing. "[N]umerous courts have held that, during the COVID-19 pandemic, the impending end of an inmate's sentence helps constitute an 'extraordinary and compelling' reason to grant that inmate's motion for compassionate release." *United States v. Sturdivant*, No. 3:12-cr-74, 2020 WL 6875047, at *7 (D. Conn. Nov. 23, 2020) (listing cases and releasing prisoner who had served about 90 percent of his sentence); *United States v. O'Neil*, 464 F. Supp. 3d 1026, 1036 (S.D. Iowa 2020) (releasing prisoner who had served about 73 percent of his sentence). The BOP has determined that Defendant has served a sufficient portion of her sentence to warrant home confinement.

For all these reasons, the Court finds extraordinary and compelling reasons to release Defendant. The Court still must decide if compassionate release comports with the applicable § 3553(a) factors. For the reasons discussed below, the Court concludes that they do.

As the Government points out, Defendant was at the center of a conspiracy to manufacture methamphetamine and allowed minor children to be put in danger as they were present in a house where methamphetamine was being "cooked." It is true that Defendant was not dissuaded from manufacturing, or at least attempting to manufacture, methamphetamine after a potentially fatal fire broke out in a house where children were present during the manufacturing process. However, Defendant was undisputedly using methamphetamine daily and marijuana

8

regularly when she "made" these decisions. (*See* PSR ¶¶ 78, 79.) She has finally received treatment for her drug addiction and has demonstrated the positive contributions she can make when clean.

Defendant's offense history—which the Government characterizes as "alarming"—also reflects her lengthy addiction to and use of drugs.[5] As Defendant points out, she was not a large-scale drug dealer but cooked methamphetamine for herself and her co-conspirators as a way to feed her drug addiction.

Defendant has served a lengthy sentence already and has availed herself of available drug treatment and extensive education and vocational training. The BOP's decision to release Defendant to home confinement suggests that it no longer views her as a danger to the community.

---

[5] What this Court finds alarming is the lack of treatment provided to Defendant whose history, including her repeat offenses, reflect a need primarily for drug treatment. As Defendant outlines in her briefs, drug "addiction is a medical disorder that affects the brain and changes behavior." (ECF No. 126 at Pg ID 455 (quoting *Understanding Drug Addiction*).) As Defendant further outlines, "[a]s experts explain, many people 'mistakenly think that those who use drugs . . . could stop their drug use simply by choosing to. In reality, drug addiction is a complex disease, and quitting usually takes more than good intentions or a strong will. Drugs change the brain in ways that make quitting hard, even for those who want to." (*Id*. at Pg ID 455-56 (quoting *Understanding Drug Addiction*).) Thus, it should come as no surprise that Defendant continued to reoffend and engaged in conduct dangerous to herself and harmful to her children absent needed drug treatment.

Finally, Defendant has significant support from her family, including her mother and sister, and her longtime friend, Larry Yack. (ECF Nos. 126-5, 126-15, 132-6.) Defendant also has the support of her sons. (ECF Nos. 132-8, 133-1.) Defendant has acknowledged that her addiction and drug use negatively influenced her sons' behavior (*see* ECF No. 130 at Pg ID 583), but she seeks to now show them "how to be a drug-free[] and stable adult" (ECF No. 126-13).

### Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's motions for compassionate release. (ECF Nos. 119, 123.)

The Court reduces Defendant's sentence to time served as of today's date. The period of supervised release remains six years. Defendant will be subject to the same conditions of release imposed in her original sentence.

Defendant shall continue to reside at the residence of her mother, Carolyn Arthur, in Owosso, Michigan. Defendant shall notify the Probation Department for the Eastern District of Michigan within 72 hours of this decision of her release and is directed to follow the instructions of the assigned probation officer.

**IT IS SO ORDERED.**

s/ Linda V. Parker  
LINDA V. PARKER  
U.S. DISTRICT JUDGE

Dated: December 23, 2021